# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

**SYED M. ABBAS**                                    **CIVIL ACTION NO. 09-0169**

**VS.**                                              **JUDGE DOHERTY**

**DEPARTMENT OF HOMELAND**                           **MAGISTRATE JUDGE HILL**
**SECURITY, ET AL.**

## REPORT AND RECOMMENDATION

Before the court is Syed M. Abbas' petition for writ of *habeas corpus* filed on

January 30, 2009 pursuant to 28 U.S.C. § 2241.  Petitioner is in the custody of the

Department of Homeland Security/Bureau of Immigration Customs Enforcement

(DHS/ICE).  He is presently detained at the Federal Detention Center in Oakdale,

Louisiana.[1]  Petitioner names the DHS/ICE as the respondent. The government has filed

an Answer and Return to the Petition with a Memorandum in Opposition to the grant of

federal *habeas* relief [rec. doc. 9], to which petitioner has filed a Reply [rec. doc. 10].

This matter was referred to the undersigned for review, report, and

recommendation in accordance with the provisions of 28 U.S.C. § 636 and the standing

orders of the court.

---

[1]At the time the petition was filed, petitioner was in the custody of the Bureau of Prisons completing a
federal criminal sentence at the Pine Prairie Correctional Institute in Pine Prairie, Louisiana.  He was therefore
challenging a detainer placed on him by the respondent.  By correspondence dated March 29, 2009, petitioner
notified the court that he had completed his federal sentence on March 27, 2009, and had been taken into custody by
the DHS/ICE on that date. [rec. doc. 11].

# FACTUAL BACKGROUND

The facts on which petitioner's claim is based are not in dispute.  In September, 2003, petitioner was indicted by a federal grand jury for fraud and conspiracy in connection with a bank access device.  After being released from the custody of the United States Marshal on bond, petitioner failed to appear for trial.  Accordingly, on November 19, 2003, a warrant for petitioner's arrest was issued.

Petitioner was apparently arrested in the United Kingdom and, on September 23, 2006, an order of extradition was issued, authorizing petitioner's extradition from the United Kingdom.  Extradition was completed on February 6, 2007, when the United States Marshal's Service brought petitioner back to the United States to stand trial.  Petitioner alleges that his extradition was pursuant to an Extradition Treaty between the United States and the United Kingdom of Great Britain, Treaty number 108-23, signed March 31, 2003.  *See* S. Treaty Doc. No. 108-23, 2003 WL 23527406 (the "Treaty").[2]

On April 18, 2007, petitioner pled guilty to conspiracy to commit bank fraud in the United States District Court for the Southern District of Texas, and was sentenced to serve 48 months imprisonment, followed by a three year period of supervised release.  As a special condition of supervision, the judgment recognized that if petitioner was deported

---

[2]The cited Treaty entered into force on April 26, 2007, after petitioner's extradition.  However, petitioner's September 23, 2006 Order of Extradition refers to the 2003 Extradition Act.  The Treaty in effect at the time of petitioner's extradition, Treaty number 8468, contains a substantially similar provision setting forth the Rule of Specialty, but did not contain a waiver provision.  The cited Treaty also decreases the time for voluntary departure from thirty to twenty days.  The differences between the prior and current Treaty provisions have no effect on the analysis and outcome of this case.  For the sake of clarity, the undersigned will cite and refer to the current Treaty cited by petitioner and apparently referred to in petitioner's Extradition Order.

during the period of supervised release, the supervision would become inactive. [Govt. Ex. A].

On November 6, 2007, the DHS/ICE lodged a detainer with the Pine Prairie Correctional Center alleging that petitioner is a Pakistani national and that the DHS/ICE had initiated an investigation to determine whether petitioner was subject to removal from the United States. Accordingly, the DHS/ICE requested to be notified at least thirty days prior to petitioner's release date, and to be provided notice of petitioner's death or transfer to another institution. [Govt. Ex. B].

On March 4, 2009, the DHS/ICE issued a Request to Depart the United States at Own Expense by Alien not Seeking Admission to the United States. In this Request, petitioner was notified that he could depart the United States at his own expense to avoid the initiation of removal proceedings, by presenting proof of his willingness to depart, his travel documents and an airline ticket, within thirty days of the date of the letter. Petitioner was advised that his failure to comply would result in the initiation of removal proceedings. Petitioner refused to sign the Request. [Govt. Ex. C].

At the time the petition was filed, petitioner complained that the detainer was issued in violation of Treaty article 18[3], the provision containing the Rule of Specialty.

---

[3]*See* fn. 2, *supra.* The Rule of Specialty, contained in article XII of the Treaty in effect at the time of petitioner's extradition, provides as follows:

(1) A person extradited shall not be detained or proceeded against in the territory of the requesting Party for any offense other than an extraditable offense established by the facts in respect of which his extradition has been granted, or on account of any other matters, nor be extradited by that Party to a third State-

( a) until after he has returned to the territory of the requested Party; or

( b) until the expiration of thirty days after he has been free to return to the territory of the requested Party.

By Reply, petitioner has clarified his position, contending that the DHS/ICE cannot detain him after his release from BOP custody because that detention would violate the Treaty's Rule of Specialty. Petitioner further argues that although he is willing to voluntarily depart this country, notwithstanding the March 4, 2009 notice requesting his departure, the Treaty requires that he be afforded twenty days of freedom in this country prior to his departure. Petitioner therefore seeks an order of this court mandating his release from DHS/ICE detention so that he may enjoy twenty days freedom within this country prior to his departure, during which time he wishes to shop at Walmart. [rec. doc. 10, p. 9].

## LAW AND ANALYSIS

**Private Cause of Action/Standing**

In general, "[t]reaties are contracts between or among independent nations . . . designed to protect sovereign interests of nations, and it is up to the offended nations to determine whether a violation of sovereign interests occurred and requires redress." *United States v. Zabaneh*, 837 F.2d 1249, 1261 (5th Cir. 1988). "International agreements, even those directly benefitting private persons, generally do not create private rights or provide for a private cause of action in domestic courts . . . ." Restatement (Third) of the Foreign Relations Law of the United States § 907, cmt. a (1987).

---

(2) The provisions of paragraph (1) of this Article shall not apply to offenses committed, or matters arising, after the extradition.

29 U.S.T. 277, T.I.A.S. No. 8468 (entered into force January 21, 1977).

Accordingly, "[c]ourts presume that the rights created by an international treaty belong to a state and that a private individual cannot enforce them." *United States v. Emuegbunam*, 268 F.3d 377, 389 (6th Cir. 2001). The Fifth Circuit has said that "[o]nly an offended nation can complain about the purported violation of an extradition treaty." *United States v. Kaufman*, 874 F.2d 242, 243 (5th Cir. 1989) (on denial of petition for rehearing and suggestion for rehearing *en banc*).

In the instant case, there is no evidence that the United Kingdom has protested or otherwise brought a claim on behalf of Abbas. Without a challenge by the United Kingdom, "there is no basis to conclude that [the United Kingdom] was or had reason to be offended by [petitioner's detention by the DHS/ICE] and, hence, this [detention] does not constitute a breach of the treaty provisions." *See United States v. Kaufman*, 858 F.2d 994, 1009 (5th Cir.1988) (panel opinion); *see also Kaufman*, 874 F.2d at 243 (on denial of petition for rehearing and suggestion for rehearing *en banc*) ("The State Department has indicated its approval of the denial to the Franks of the benefits of the rule of speciality contained in the treaty between the United States and Mexico since 'only an offended nation can complain about the purported violation of an extradition treaty,' and Mexico has made no protest whatever about the prosecution of the Franks brothers in Texas."); and *Blancas v. United States*, 2009 WL 510611, *4 (W.D.Tex. 2009).

Moreover, individuals ordinarily may not challenge treaty interpretations in the absence of an express provision within the treaty or an action brought by a signatory

nation. *See Goldstar S.A. v. United States*, 967 F.2d 965, 968 (4th Cir. 1992); *Handel v. United States*, 2007 WL 924511, *2 (N.D.Tex. 2007).

In the case at hand, there is no express provision permitting Abbas to present the instant challenge and the United Kingdom has not protested the actions taken against him. Without the United Kingdom's challenge, it appears that petitioner does not have standing to challenge his detention based on an alleged violation of the Extradition Treaty between the United Kingdom and the United States. *See Handel*, 2007 WL 924511 at *2 (relying on *Kaufman*, finding the defendant lacked standing to challenge his sentence based on a violation of an Extradition Treaty).

The undersigned notes, however, that the circuit courts are split as to whether an extradited person, as opposed to the country from which the person was extradited, may invoke the specialty doctrine. *See United States v. Feng*, 2009 WL 1254670, *6 fn. 17 (D.Kan. 2009) *citing United States v. Levy*, 905 F.2d 326, 328 n.1 (10th Cir. 1990) (extradited person has standing to claim violation of the rule of specialty) , *United States v. Puentes*, 50 F.3d 1567, 1572 (11th Cir. 2005) (the person extradited may raise whatever objections the rendering country might have), *United States v. Najohn*, 785 F.2d 1420, 1422 (9th Cir. 1986) (same), Cf. *United States v. Kaufman*, 874 F.2d 242, 243 (5th Cir. 1989) (holding that "only an offended nation can complain about the purported violation of an extradition treaty"), *Demjanjuk v. Petrovsky*, 776 F.2d 571, 584 (6th Cir. 1985) (same), *vacated on other grounds*, 10 F.3d 338 (6th Cir.1993), and *United States v. Reed*,

639 F.2d 896, 902 (2d Cir. 1981) (same).

The Fifth Circuit's language in its denial of the petition for rehearing and suggestion for rehearing *en banc* in *United States v. Kaufman*, 874 F.2d at 243, appears to clearly endorse the rule that extradited persons lack standing to assert violations of Treaty provisions.[4] That interpretation of the *Kaufman* decision has been endorsed by the Fifth Circuit in later cases. *See United States v. Quiroz*, 137 Fed.Appx. 667, 671 fn. 1 (5th Cir. 2005) *citing Kaufman*, 874 F.2d at 243 ("it is also relevant to note the Defendants have no standing to assert their Specialty Doctrine argument. This court's decision in *U.S. v. Kaufman* . . . precludes a criminal defendant from arguing the Specialty Doctrine when the asylum state, here Australia, has failed to raise an objection to the proceeding."); *United States v. Miro*, 29 F.3d 194, 200 fn. 5 (5th Cir. 1994) (noting that in *Kaufman*, the Fifth Circuit "suggested that a criminal defendant has no standing to argue the specialty doctrine when the asylum state has failed to raise an objection to the proceeding.").

Law review articles and courts which have noted the circuit split have aligned the Fifth Circuit with those circuits which deny standing to an extradited person. *See Feng, supra*.; *Puentes*, 50 F.3d at 1572 fn.2; *United States v. Puentes*: Re-examining Extradition

---

[4]In its original decision, the *Kaufman* court did not reach the issue of whether the defendants lacked standing to raise the principle of speciality because it found that the principle was not violated, and that, therefore, the issue was moot. *Kaufman*, 858 F.2d at 1009 fn. 5. The defendants in *Kaufman* then petitioned the Fifth Circuit for rehearing. *Kaufman*, 874 F.2d 242 (5th Cir. 1989). The Fifth Circuit reported that it had submitted its prior ruling to the U.S. Department of State for review and that the State Department responded that the court correctly denied the defendants the benefits of the principle of speciality because "only an offended nation can complain about the purported violation of an extradition treaty" and hence, the right belongs only to the requested state. *Id.* The Fifth Circuit therefore denied the defendants' petition for rehearing, effectively refusing the defendant standing to raise violations of the doctrine of speciality. *Id.*

Law and the Specialty Doctrine, 1 J. Int'l Legal Stud. 151, 164 (1995); Individual Rights and the Doctrine of Speciality: The Deterioration of *United States v. Rauscher*, 14 Fordham Int'l L.J. 987, 1011-1012 (1991); Standing to Allege Violations of the Doctrine of Specialty: An Examination of the Relationship between the Individual and the Sovereign, 62 U. Chi. L. Rev. 1187, 1196-1197 (1995).

However, other Fifth Circuit cases have ignored *Kaufman* and stated that the question of whether a criminal defendant has standing to assert the rule of specialty remains open in this circuit. *See United States v. Angleton*, 201 Fed.Appx. 238, *4 fn. 12 (5th Cir. 2006) *citing United States v. LeBaron*, 156 F.3d 621, 627 (5th Cir. 1998); *United States v. Painter*, 243 Fed.Appx. 818 (5th Cir. 2007) *citing LeBaron*, 156 F.3d at 627. These decisions were issued *after* the decision in *Kaufman*.

Although the language in the court's *Kaufman* opinion regarding standing in appears in the denial of a request for rehearing, the undersigned feels compelled to consider the decision binding precedent in this circuit, and, as such, providing the rule of decision for this case.

Given the lack of clarity in the Fifth Circuit's decisions, however, the undersigned will briefly address the merits of petitioner's claim.

**Merits**

Even if petitioner had a private right of action, and therefore standing to bring a claim based on an alleged violations of the Treaty, petitioner's claim fails on the merits.

Article 18 of the Treaty sets forth the Rule of Specialty under international law.[5] Paragraph 1 provides, subject to specific exceptions set forth in paragraph 3, that "[a] person extradited under this Treaty may not be detained, tried, or punished in the Requesting State except for: (a) any offense for which extradition was granted, or a differently denominated offense based on the same facts as the offense for which extradition was granted, provided such offense is extraditable, or is a lesser included offense; (b) any offense committed after the extradition of the person; or (c) any offense for which the executive authority of the Requested State waives the rule of specialty and thereby consents to the person's detention, trial, or punishment." S. Treaty Doc. No. 108-23, 2003 WL 23527406, ¶ 18(1).

Under paragraph (3), these restrictions "shall not prevent the detention, trial, or punishment of an extradited person, or the extradition of a person to a third State, if the [extradited] person . . . (b) does not leave the territory of the Requesting State within 20 days of the day on which that person is free to leave." S. Treaty Doc. No. 108-23, 2003 WL 23527406, ¶ 18(3).

Article 2, "Extraditable Offenses" are defined in terms of punishment, as offenses "punishable under the laws in both States by deprivation of liberty for a period of one year or more or by a more severe penalty" and includes "an attempt or a conspiracy to commit, participation in the commission of, aiding or abetting, counseling or procuring

---

[5] *See* fns. 2 and 3, *supra.*

the commission of, or being an accessory before or after the fact to any offense. . . ." S. Treaty Doc. No. 108-23, 2003 WL 23527406, ¶ 2(1) and (2).

The government argues that petitioner's current detention is not in violation of the Rule of Specialty as that provision provides protection against detention, trial or punishment for criminal offenses. The government then argues that since removal proceedings are not criminal proceedings, but, rather, are civil actions to determine eligibility to remain in the United States, the Rule of Specialty does not apply. The undersigned agrees.

It is beyond dispute that removal proceedings are purely civil actions to determine eligibility to remain in this country; the proceedings are not criminal prosecutions. *INS v. Lopez-Mendoza*, 468 U.S. 1032, 104 S.Ct. 3479 (1984). Moreover, the purpose of deportation is not to punish. *Id*. Accordingly, the immigration judge's sole power is to order deportation; the immigration judge cannot adjudicate guilt or punish the respondent for any crime. *Id*. "In short, a deportation hearing is intended to provide a streamlined determination of eligibility to remain in this country, nothing more." *Id*.

The Rule of Specialty prohibits the "prosecution of [a] defendant . . . for a crime other than the crime for which he was extradited." *See United States v. Alvarez-Machain*, 504 U.S. 655, 659, 112 S.Ct. 2188, 2191 (1992); *United States v. Rauscher*, 119 U.S. 407, 430 (1886); *see also U.S. v. Saccoccia*, 58 F.3d 754, 784 (1ˢᵗ Cir. 1995) (finding that a forfeiture proceeding did not constitute a prosecution for a criminal offense on which

extradition was neither sought nor granted and hence that there was no violation of the Rule of Specialty).

The rule "generally requires a country seeking extradition to adhere to any limitations placed on prosecution by the surrendering country [and] . . . [t]ypically, the rule is invoked to circumscribe the specific crimes for which a defendant may be tried following extradition." *United States v. Cuevas*, 496 F.3d 256, 262 (2d Cir. 2007) (internal quotations and citations omitted).  The rule is therefore "designed to guarantee the surrendering nation that the extradited individual will not be subject to indiscriminate prosecution by the receiving government." *Saroop v. Garcia*, 109 F.3d 165, 168 n. 6 (3d Cir. 1997) *quoting Leighnor v. Turner*, 884 F.2d 385, 389 (8th Cir. 1989).

Accordingly, courts have found that the rule of specialty has no applicability in the context of a civil proceeding.  *See Matter of Badalamenti*, 19 I & N. Dec. 623, 625, Interim Decision 3057, 1988 WL 235450 (BIA 1988) (Treaty provision according 45 days to depart "protects against detention, trial, or punishment for criminal offenses other than those for which the subject was extradited, and exclusion proceedings are not criminal proceedings."); *see also S.E.C. v. Eurobond Exchange, Ltd.*, 13 F.3d 1334, 1337 (9th Cir. 1994) (finding a Treaty of extradition did not apply to a civil enforcement action filed by the S.E.C. because it did not offend the surrendering country); *S.E.C. v. Marimuthu*, 552 F.Supp.2d 969, 972 (D.Neb. 2008) (same).

In this case, petitioner's detention is not for the purpose of a criminal prosecution or to impose punishment. Petitioner has been detained for the purpose of removing him from this country, after he was given the opportunity to depart on his own. The undersigned finds that the petitioner's detention pending removal is not a violation of the treaty provisions.[6]

This finding is based on the language of the Treaty itself (which speaks in terms of criminal punishment for criminal offenses), the principles upon which the Rule of Specialty is based and the weight of the authority cited above. Indeed, if this were not the case, the United States government would be effectively precluded from enforcing its civil immigration laws, and, as a result, would be forced to allow persons, who are not eligible to enter or to be admitted into this country, to remain free within the borders of the United States, a result which is surely not intended by the Rule of Specialty. For these reasons, the undersigned finds no violation of the Rule of Specialty in this case.

The undersigned also finds no merit in petitioner's argument that the Treaty requires that he be given twenty days of complete freedom in this country, purportedly to shop at Walmart. At least one court has held that "the rule of specialty does not authorize a defendant to remain in the United States . . . following a term of imprisonment." *Quezadaruiz v. Nash*, 2005 WL 1398503, *7 (D.N.J. 2005).

---

[6]Although there is nothing in this record indicating the United Kingdom's position as to whether the Rule of Specialty applies to petitioner's civil detention pending a determination of his removability, the undersigned finds that there is little potential that the United Kingdom would view the mere conduct of a civil removal proceeding under the circumstances presented herein, as a breach of any Treaty obligation by the United States.

Furthermore, the BIA has held that a Treaty according 45 days within which an extradited person may depart does not protect against exclusion proceedings; all that is required is that the government afford the extradited person a "fair and reasonable opportunity to depart." *Badalamenti*, 19 I & N. Dec. at 626. That has been given to petitioner in this case. To be "fair or reasonable", the opportunity to depart surely need not include the extradited person's unfettered or unrestricted ability to travel within the entirety of this country.

Moreover, Article 18 of the Treaty, fairly construed, does not support petitioner's position. While the article prohibits detention in connection with a criminal prosecution other than that for which extradition was authorized, it does not prohibit detention (criminal, civil or administrative) in cases where the extradited person has failed to leave the country "within 20 days of the day on which that person is free to leave." That is the case here.

The record clearly demonstrates that petitioner completed his term of imprisonment at the end of March, 2009. It is equally clear that upon completion of his sentence, petitioner was "free to leave", and that well over twenty days have passed since that time. In fact, as early as March 4, 2009, petitioner was advised of his right to depart the United States at his own expense, and he was given an ample, fair and reasonable opportunity to do so. Had petitioner merely presented his travel documents and obtained an airline ticket, petitioner would have already been sent back to either the United

Kingdom or Pakistan.

However, rather than complying with the government's request to depart, petitioner instead advised the government that he did not have his passport, had no contact with his Embassy, and could not arrange an airline ticket while he remained incarcerated, all while suggesting that an opportunity to shop at Walmart would in some way alleviate his dilemma. While that argument may have had some appeal in March (not the shopping at Walmart), over four months have passed since then. Petitioner's travel arrangements could easily have been made via correspondence and telephonic communications with the appropriate consular officers and airlines. Yet, there is no evidence in the record that petitioner took any action to depart this country, despite the fact that he was free to do so.

For these reasons, the undersigned finds no violation of the Treaty has occurred in petitioner's case as a result of the government's refusal to grant petitioner his complete unrestrained and unfettered freedom for twenty days while he roams this country.

Accordingly;

**IT IS RECOMMENDED** that petitioner's federal *habeas corpus* petition be **DENIED AND DISMISSED WITH PREJUDICE**.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed.R.Civ.Proc. 72(b), parties aggrieved by this recommendation have ten (10) business days from service of this report and recommendation to file specific, written objections with the clerk of court. A

party may respond to another party's objections within ten (10) days after being served with a copy thereof.

**Failure to file written objections to the proposed factual finding and/or the proposed legal conclusions reflected in this Report and Recommendation within ten (10) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. See *Douglas v. United Services Automobile Association,* 79 F.3d 1415 (5th Cir. 1996).**

THUS DONE AND SIGNED in Chambers at Lafayette, Louisiana, July 21, 2009.

C. Michael Hill
C. MICHAEL HILL
UNITED STATES MAGISTRATE JUDGE